CHICAGO, ST. PAUL & KANSAS CITY RAILWAY CO. *vs.* ST. PAUL UNION DEPOT CO.

Argued June 21, 1893.   Affirmed Aug. 17, 1893.

**A Contract Construed.**

> A contract whereby a certain railway company was admitted to the use of all tracks, privileges, and facilities of the St. Paul Union Depot Company pending litigation to determine the terms and conditions of a permanent admission, considered and construed.

Appeal by defendant, the St. Paul Union Depot Company, from a judgment of the District Court of Ramsey County, *John W. Willis*, J., entered February 15, 1893.

The St. Paul Union Depot Company is a corporation created under the laws of this state, and subject to the provisions of Sp. Laws 1879, ch. 318. The general nature of its business was declared to be to construct and operate transfer tracks in St. Paul, open alike to the use under proper regulations of all railroads constructed or to be constructed to or into that city, and to build, maintain, and operate a Union Passenger Depot in that city, and proper tracks for access thereto. Its capital stock was $250,000, but on November 6, 1884, it was increased to $500,000, of which only $350,000 had been issued in blocks of $70,000 to each of five different railway companies. Prior to September 30, 1885, it had built, and was in possession of, and operating, the Union Depot, its grounds, and divers railroad tracks, and had mortgaged the same for $250,000 bearing six per cent. interest, payable semiannually. On the last-named day this Depot Company commenced an action against the Minnesota and Northwestern Railroad Company, then just constructed, to determine its claim to come into and participate in the privileges and use of the tracks and passenger depot and to restrain it from so doing, unless it should purchase 583⅓ shares of its capital stock at the gross price of $200,000. The railroad company claimed the right under the statute to purchase the shares for $58,333.33. On October 3, 1885, the Depot Company, by its Board of Directors, adopted a resolution which the railroad company accepted. Copies of each are as follows:

"Resolved, that the said railroad company be admitted to all the tracks, privileges and facilities of this company by paying a monthly rental of $833.33, and in addition thereto its proportion of the expenses (not including in expenses interest on bonds or dividends on stock) of this company, on the same basis as other companies using the same; this arrangement to be without prejudice, as aforesaid, to the claims of either party in said suit, and to continue only until the final determination of the said rights of the parties, either in said litigation or by agreement."

"The Minnesota and Northwestern Railroad Company hereby accepts the proposition contained in said resolution, with the distinct understanding that it is without prejudice to its right in the suit now pending or otherwise, and agrees to pay, pending said suit, the sum of $833.33 per month, as in said resolution provided, pay-

able on the 10th day of each month for the preceding month at the office of the St. Paul Union Depot Company in St. Paul, Minn."

That litigation ended in favor of the railroad company by the decision of this court in *St. Paul Union Depot Co.* v. *Minnesota & N. W. R. Co.*, 47 Minn. 154. The Chicago, St. Paul & Kansas City Railway Company succeeded to the rights, railway and property of the Minnesota & N. W. Ry. Co. The present action was brought to construe the foregoing resolution and acceptance. The trial court decided that the monthly payments of $833.33, then amounting to $51,676.14, should apply as partial payment on the price the railroad was to pay for the stock. The Depot Company appeals.

*W. H. Norris*, for appellant, cited *Strickland* v. *Maxwell*, 2 Cromp. & M. 539; *Carlson* v. *Duluth Short Line Ry. Co.*, 38 Minn. 305; *St. Paul, M. & M. Ry. Co.* v. *St. Paul U. D. Co.*, 44 Minn. 325; *Campbell* v. *Rotering*, 42 Minn. 115.

*Lusk, Bunn & Hadley*, for respondent, cited *Creighton* v. *Kerr*, 20 Wall. 8; *Durant* v. *Essex Co.*, 7 Wall. 107; *Wanzer* v. *Self*, 30 Ohio St. 378; *English* v. *English*, 27 N. J. Eq. 579.

COLLINS, J. This action grew out of the litigation which terminated in the decision of this court in the case of *St. Paul Union Depot Co.* v. *Minnesota & N. W. R. Co.*, 47 Minn. 154, (49 N. W. Rep. 646.) The present plaintiff is the successor of the defendant in that action, which was tried in District Court soon after its commencement, in 1885, but was not decided in that tribunal until December 6, 1890, the judgment being affirmed here on August 24, 1891. The principal controversy was as to the terms or conditions upon which the railway company could enter into and share in the privileges of the depot company, and it was held, against the contention of the latter company, that the former had the right to take one-sixth of the stock at par value, namely, $58,333.33, and had properly demanded that right before the action was brought. In other words, it was determined that, at the time the suit was commenced, the railway company had complied, so far as was within its power, with all of the requirements imposed

upon it by law, and that the default was with the depot company, which had refused to accept payment for the stock at par value, but had insisted upon payment at its real or increased value. It appears that, immediately after the bringing of that action, the plaintiff depot company and defendant railway company entered into a contract, expressed in a resolution adopted by the plaintiff's board of directors, and accepted by defendant, and it is this contract which we are now called upon to construe. We regard it as unnecessary to quote it in full, but it will suffice to say that, by way of recital, the fact was stated that the railway company had made several applications to the depot company to use its tracks, depot privileges, facilities, and services, and that a difference of opinion had arisen between the parties as to the terms upon which the railway company was entitled to such use under the law; that a suit had been brought to determine the respective rights, and, pending the litigation, it was deemed advisable by all that the railroad company be admitted to the enjoyment of said tracks, depot privileges, facilities, and services of the depot company, "upon terms to be temporary in their nature, and to be *entirely without prejudice* to the rights and claims of rights of the parties as asserted in said suit." Therefore it was resolved "that the said railroad company be admitted to all the tracks, privileges, and facilities of this company by paying a monthly rental of $833.33, and, in addition thereto, its proportion of the expenses (not including in expenses interest on bonds or dividends on stock) of this company, on the same basis as other companies using the same; this arrangement to be *without prejudice* as aforesaid, to the claims of either party in said suit, and to continue only until the final determination of said rights of the parties, either in said litigation or by agreement." The acceptance before mentioned was "with the distinct understanding that it is *without prejudice* to its right in the suit now pending *or otherwise.*" The italics in these quotations are the writer's. From the date of this resolution down to August 1, 1891, the railway company continued to pay the stipulated sum each month, and also paid its share of all current expenses of keeping up and maintaining the terminal facilities, and of managing the property and business. It did not pay any part of the interest on outstanding bonds, or participate

in dividends declared on stock, but, except as to interest and dividends and the aforesaid monthly payment, it occupied and used the depot and privileges on exactly the same terms as the original stockholders. These terms are stated in *State* v. *St Paul Union Depot Co.*, 42 Minn. 142, (43 N. W. Rep. 840.) The sum total of these monthly payments, provided for in the contract, amounted to $58,222.03, or nearly to the sum which the railway company offered and endeavored to pay for its stock shares in 1885, and which, it was adjudged, the depot company should have then accepted; and the question now presented is whether any part of the sum so paid shall be applied, under the contract, in payment of the sum found due, as of August 1, 1891, for the shares of stock to which the railway company was entitled. To determine this question, we are required to construe and to give effect, if pertinent, to various expressions made prominent in the contract.

It was determined in the court below that the several payments must be considered as having been made on account of stock, and, by stipulation of counsel, it had been previously agreed that, should the court come to that conclusion, these payments might be treated and considered as if a single payment of $51,676.14 had been made on August 1, 1891. The appellant's contention is that no part of the monthly payments can be regarded as having been made on account of stock, but simply and solely as monthly rental or compensation for the use of the depot property and privileges, and that there is no language in the contract which will justify the construction placed on it in the court below; while the position of respondent is that, as it was with much care and precision expressly stipulated and agreed that the arrangement should be entirely without prejudice to the rights and claims of each party, its terms would be ignored and violated if the railway company was now compelled to pay the full sum found to be due for stock as of the last-mentioned date. The parties to the agreement deliberately reduced it to writing, and, were the terms plain and unambiguous, the writing, as drawn, would have to control. For illustration, if the clauses whereby it was stipulated that its execution and acceptance should not prejudice the rights or claims of either party had been omitted, no other construction than that contended for by the appellant would be possible. But with these

clauses, which cannot be ignored, and must be given effect, there arises a doubt and uncertainty as to the intent, and the situation of the parties and the surrounding facts and circumstances may be appealed to for the purpose of pointing out the proper application of the language used. Had it been contained in an offer or an admission or an order made in the then pending action, its construction would be that no rights or privileges of the parties concerned were to be considered as waived or lost, except in so far as they were expressly conceded or denied. But this instrument was an independent contract, and was not an offer or an admission or an order in an action, and with respect to the pending litigation it was wholly immaterial whether stipulations were inserted of the import of those now being considered. Neither party's position in that suit could have been affected by a contract which fixed temporarily the terms on which one should furnish and the other use the depot privileges and facilities, pending a trial of an action really brought to determine what the railway company should pay for its stock shares. So it is obvious that we are not to construe the clauses in question as narrowly as if they were found in an instrument which conceded or denied a right, and which might be used to the injury of a litigant; but we are to consider them in the light of the surrounding circumstances, and with reference to the situation of the parties.

The railway company, owning and about to operate a newly-constructed road, was desirous of running its trains into the only depot of a large city,—the only place at which it could accommodate the public, or hope to compete with its business rivals. To do this, it sought to become a shareholder in the corporation owning the depot, and on equal terms with the other companies, and offered to pay the par value of the stock shares. This offer was rejected, upon the unsustainable ground that the railway company was obliged to pay the market value. No other issue really existed between the parties, and, fearing that the company might connect its tracks with those which entered the depot, the corporation instituted an action to prevent this in the fall of 1885. Realizing that, pending the trial of that suit, the interests of all parties and the greater interests of the public would suffer unless some steps were taken which would result in bringing the railway trains

into the depot, the resolution now before us was adopted by the board of directors of the depot company, and promptly accepted by the railway officials. The railway company had attempted to comply with every requirement demanded of it by law, and had been resisted by the depot corporation. The latter, in possession, and thus able to deny the use of its terminal facilities and privileges, had improperly and unlawfully refused them. With this condition of affairs, the contract was entered into as a temporary measure, and until the controversy should be determined by the courts, the company paying a certain sum each month, the payment to be entirely without prejudice to the claims and rights of each party. During the succeeding five years the railway company thus paid into the treasury of the depot corporation a sum of money nearly equal to that which it had offered to pay at the outset, and which the depot company was bound to accept. Notwithstanding the fact that the latter was without justification when exacting these payments, it is now insisted that because of the contract the sum so paid shall be wholly lost to the party in the right of the controversy, and that full payment for the stock at par value shall be made. The railway company shall be punished to the extent of the difference between what it would have paid for its stock shares had its offer been accepted and what it actually did pay (to which should be added the sums it would have received as dividends on its shares of stock) for having entered into a contract which it could not well avoid without disregarding the interests of a public it was bound to serve,—a contract demanded without a shadow of right, but in which it was expressly agreed that it should be without prejudice to existing claims or rights. It does not seem probable that a construction which would work so rank an injustice—would be so extremely prejudicial—was intended by the parties.

Counsel for appellant construes that part of the instrument which provides against prejudice as having reference to the suit only, and as stipulating that in no event could the writing be used to the injury of either party in that action; but, as before suggested, we think it perfectly plain that no such construction is possible, because no contingency could arise whereby the agreement could have had any effect in the litigation. No part of it had a bearing on the

questions in dispute. No claim was made by the railway company that it could participate in the facilities and privileges it was attempting to secure, except on equal terms with other companies, and its complaint was that equal terms were refused. Nor did the depot company contend that it had the power to exclude the railway company from its tracks and depot. Nor was the monthly rental value of the tracks and building the subject of the litigation. A contract which simply admitted the trains of the railway company into the depot, and fixed *pendente lite* the terms of admission, could in no manner have been pertinent to the real issue in that action, or have worked any benefit or injury therein. As the language in question was inapplicable to the suit, there is but one way in which it can be construed so as to give it effect, so as to make effectual the clauses in which it is so clearly provided that the contract shall not prejudice—that is, shall not injure or damage —either of the contracting parties, and that is by adopting the views of the learned trial judge. Nor has counsel for appellant undertaken to point out how the railway company could have been prejudiced except in the precise manner now attempted; that is, by compelling it to pay a sum greatly in excess of that it would have paid had its legal rights been acknowledged in the year 1885. We are of the opinion that the contract must be construed as contemplating that the monthly payments (which from the amounts cannot be considered as the bare equivalent of interest on this plaintiff's share of the cost or value of the depot property) were to be regarded as a provisional payment upon stock, and to be taken into account as such upon a final settlement to be made when the value of the stock as between the parties was determined by the courts. The language found in the contract is easily capable of that construction; and, under the circumstances, a construction favorable to justice, and which will not lead to the perpetration of a great wrong, should be adopted. If we should accept the other view, the railway company would, practically, be made to twice pay for what it gets, and this by allowing its adversary to take advantage of what was its own wrong, primarily. The whole force of the former decision, in which it was laid down that to require the railway company to pay present or market value of the stock would be to unjustly discriminate against a road which desired

to use the tracks and depot owned by the depot company contrary to its articles of association, would thus be evaded, and an exceedingly unjust discrimination approved and indorsed.

Judgment affirmed.

(Opinion published 56 N. W. Rep. 129.)

